When imposing supervised release, you can only infringe, if at all, on a defendant's fundamental liberty interests, enhanced procedural requirements that are met, and that requires that the district court put special record findings on the record that are supported by evidence. And of the 27 supervised release conditions that were imposed in this case, we challenge only four, as the government concedes that one needs to go back for correction to comply with the judgment. But I want to focus first on the term of supervision in this case, the lifetime term, because that really drives this court's consideration of the other four conditions. As early as 2011, 20 years ago in U.S. v. Apodaca, this court was very concerned with the application of lifetime supervision in general BP cases that involve possession only, like Mr. Gibson's. And even at that time, the court had concerns about applying lifetime supervision where it was a standard internet download only type of case. And it said in that case that at that point, there were only studies indicating that there wasn't the type of indication that it would lead to other types of crimes. But it was hesitant in that case to go a step further because studies weren't there yet. The studies are there yet. The studies do indicate that there isn't the type of recidivism that would indicate that lifetime supervision is necessary for someone like Mr. Gibson. Not only did we present that, but we also have in this case a psychological report that indicates Mr. Gibson's Asperger's was the cause of his conduct in this case. And that his psychologist said that Mr. Gibson is the very type of individual... Counsel, the district court made a specific finding at ER 38 that your client's been viewing this type of pornography since age 12. He's been looking for material showing violent victimization. He had troubling behavior on supervised release, including the SIM card incident. His supervised release was revoked. And he was found with hundreds, 500, 200 child pornography videos, thousands of images of child erotica, and 307 child pornography images. Explain to me how given all of that, in this particular case, the district court reversibly erred in imposing lifetime supervised release. Certainly, Judge Bennett. What you've just explained, Your Honor, is no different than the run of the mill case. Beyond that, when the district court imposed lifetime supervision, it wasn't just those factors. The district court criticized and blamed Mr. Gibson for exercising his right to go to trial, pro se. It criticized Mr. Gibson for being obstinate in refusing counsel, which is part of his disability, which was his Sixth Amendment right to exercise. Counsel, when you say run of the mill case, what do you mean? The number of images that were in this case were by no mean an astronomical number. The 600 or the 500 images that were in this case, and when I say that, Your Honor, I don't mean any disrespect. These images, we're not talking about thousands and thousands of images. We're talking about, it was 500 images. He started looking at them when he was a youth because he was molested, he was a psychologist, said that the reason that he looked at these was not because he had a voracious appetite and that he was someone who couldn't be, through therapy, through evidence-based therapy, could not see his way to be rehabilitated in society. It was someone who was looking for a way to understand his own molestation. This is someone who should not have been penalized for going to trial. It was someone who should not have been penalized. I'm sorry. Go ahead, please. You're essentially saying that the district court punished him for going to trial, but as I read the record, the district court also looked at the fact that there was a failure to accept responsibility and a failure, essentially, to be remorseful. So isn't that an appropriate consideration in the length of supervised release? Perhaps, if that would have been true, Your Honor, but that wasn't true. What actually happened is at resentencing, when Mr. Gibson was properly medicated and he was able to develop a relationship with his counsel and he was able, given the circumstances, because he was able to then understand more comprehensively, he did make a very remorseful acceptance of responsibility. The difficulty the district court had was he criticized Mr. Gibson for not being tearful enough. Mr. Gibson, with his disability, may not have been able to be tearful, but that is not what determines whether someone is remorseful. That was an affront to Mr. Gibson's acceptance of responsibility, and for the district court to eschew that when Mr. Gibson finally did accept responsibility, that wasn't appropriate because that is something. I'm sorry, Your Honor. Isn't the district court in the best position to judge the sincerity of the, would you say, is the sincere acceptance of responsibility? The district court had had the defendant in front of him for a long time, heard what the defendant said, heard what the defendant had done, and then saw him read the statement at sentencing. We weren't there, but isn't the district court entitled to decide how sincere it is? I think that's true, Your Honor, I do, and the district court did say that it was a good thing. The difficulty here is the district court, when you read how he recounts it, he criticizes Mr. Gibson for first consulting with his counsel, for being hesitant, for reading from a letter. All things that, taken into consideration with Mr. Gibson's past workers, should not have been used against him. It's not that the district court didn't credit it. It's the conglomeration of things that the district court used against him that should not have been taken into account in this particular case, given the psychological report. If I could address one more thing. Or you may want to save the remainder of your time. You're down to just a little over two minutes. I'll save it, Your Honor. Thank you. Okay, and are you able to hear me? Yes. Thank you. Good morning. May it please the court, Elizabeth White for the United States. The district court here acted well within its discretion in imposing lifetime supervision. I note first that the sentencing guidelines do recommend lifetime supervision for those of sex offenses, and this court held in Apodaca that sentencing individuals convicted of possessing child pornography to lifetime supervision is not substantively unreasonable in and of itself. As Judge Bennett noted, the district court talked quite a bit about this defendant's specific offense. This was a course of conduct that had lasted over a decade, half of the defendant's started looking at child pornography when he was 12, continued he was arrested when he was 24. The court talked about the nature of the materials that the defendant had, the types of search terms that he was using. I mean, he was seeking out videos and depictions of really violent sexual abuse of children, and the district court put that into account as well. And the other thing is that at the sentencing hearing and in the court's written order, in both places, he said that if the defendant establishes that he is not in need of supervision, I mean, either he or the probation officer, if the probation officer at some point in the future becomes satisfied that supervision can be terminated, either the probation officer can make that motion or the defendant can make that motion. I think what the district court recognized here is that this defendant has a serious, serious problem that is not going to be fixed overnight, and it's not going to be fixed simply by the term of imprisonment. These kinds of sexual deviant mental problems and course of conduct can take years and years of in-depth therapy and in-depth behavior modification and control to get a handle on. And if at some point in the future this defendant gets a handle on that, supervision can be terminated. But the purpose of supervised release and the purpose of supervised release conditions is forward-looking. It is about protecting the public. And at this point, there is no question that the defendant, that the public needs to be protected and that the court was certainly reasonable in doing what the sentencing guidelines recommend, which is imposing a term of lifetime supervised release. I'm going to anticipate the other issue that my friend on the other side was about to jump into and just make a couple of comments about the risk notification condition, which is also being challenged in this appeal. And I think this is actually part of the same theme, variations on the theme, that supervised release conditions are about looking forward. It's about what's going to be necessary in the future. And when it comes specifically to this risk notification condition, the defendant may pose risks to people, to specific people in the future. And it is virtually impossible for the district court to know at sentencing what might happen in the future. But what we know is that the probation officer, who is going to have a relationship with this defendant, who is going to know what's going on in this defendant's life, this probation officer is going to be able to see the red flags when they arise. And when they arise, when, hypothetically, when the defendant informs his probation officer that he's applied for a job driving an ice cream truck, I mean, something that the probation officer can see and say, okay, this is a red flag. Because of your criminal conduct and because of course of illegal behavior, I believe that you present a specific risk to this specific person. And so I am directing you to tell that person about that risk. As Mr. Wackenschaf said in the earlier argument, the onus is on the probation officer to identify the specific risk and the specific person. And that's what cures the vagueness problem in Evans and in Magdarella. Because in both of those cases, the condition was, as directed by the probation officer, you will tell people about risks. And if the probation officer said, hey, you have to tell people about the risks that you posed to them, the defendant says, okay, what do I have to do? I mean, what are the risks? Who are the people? That put the onus on the defendant so that he wasn't able to tell whether or not he was complying with that condition or not. In Magdarella, they took the Evans, essentially the Evans condition, and the court added the word specific risk, specific people. And I think that was probably an attempt to cure the problem in Evans to say specific person, specific risk. But the way it was worded, it could still cause the probation officer to say to the defendant, you need to tell every specific person who you once again, the defendant would be saying, what is it? This way, what this condition recognizes is that the probation officer has the ability in the future, is the person in the best position to see those red flags when they pop up and instruct the defendant to let people know about those concerns. I understand the logic of that, but it brings me right back to the question I in the previous case, which is that we've got authority that says you can't solve an excess discretion problem or a vagueness problem by assigning discretion to a third party, in this case, the probation officer. So I understand the logic, but what do you do about that case law? Well, see, and I think, but I think that this isn't about discretion. The vagueness problem wasn't about giving the probation officer too much discretion. The vagueness problem was you look at that condition and you say, what's the, what does the defendant have to do? I mean, there's just no clue as to what, if the probation officer says you need to warn people about the risks you pose to them. I mean that the defendant is sitting there not knowing what to do. That's where the vagueness problem is. When, when the instruction says, if the probation officer sees a specific red flag in the, in the future and sees that, that you pose a specific risk to a specific person, they can direct you to, to inform that person of that risk. There's nothing vague about that. I mean that, you know, that puts, that puts the onus on the probation officer. It tells the, the supervisee exactly what it is that he needs to do. And that, I mean, that's not a vagueness problem. I mean, that's, I know that there are cases that say you just can't give probation officers too much discretion, period. That, which is different from vagueness. But, and I don't think that's a problem either because these are as, you know, as we've said, these are community specialists. They know the defendant. They know where the defendant is in his treatment plan, right? I mean, if he's, presumably the probation officer will know 10 years down the line what he's doing in his, in his treatment and therapy and whether he's not. But as I, I'm sorry, Miss, I've been interrupting you. I know your time is running short. But my question is, the case law seems to suggest that the condition itself needs to provide some guidance to the probation officers as to how that discretion is to be exercised. And so, what in this particular condition gives that determinate guidance to the probation officer? Because you're saying, oh, leave it up to them. They're experienced. They can see the red flags. But our case law doesn't admit that level of discretion. I actually, I don't know that that is a particularly broad level of discretion. I mean, we, you know, this court, first of all, this court has endorsed this specific condition, as Judge Bennett said numerous times very recently, including Post Magdarella. But, there is a place for discretion. I think there's some, there's the muddledness in our case law in this area, arguably. But if the case law essentially suggests that the condition itself needs to provide some determinate guidance to the probation officer, what language in this particular condition does that? I would say that the language is that if the probation officer determines that the defendant, let's see. Well, I mean, one of the problems, one of the things that the court pointed out in Magdarella, and I think Evans as well, is that there was no limitation on what kind of risk we're talking about here. And this one, and this one specifically says it has to be a risk posed by the defendant, which I would have assumed would be kind of self-evident in Evans. So that seems to be the limitation that you're saying, well, you know, it's a little more specific. But this defendant chooses that specific risk. I'm just not sure that I see a distinction between the level of discretion given to the probation officer here and the one that was not in Magdarella. I think, if I could just have 10 more seconds, I think that this is similar to me to the place restriction, which the defendant's not allowed to go to someplace that's primarily used by children, but the probation officer can give him written consent, right? And so there's nothing in that rule or in that condition that says how the probation officer is supposed to exercise that discretion to give consent. But I think that that condition is another just recognition of this is the role that probation officers play. And they are the position to make those determinations. All right. Thank you. I am now over my time. Thank you so much. Thank you. Cleary. Thank you, Your Honors. Two points. To the government's suggestion that the lifetime supervision term is appropriate because Mr. Gibson can seek to have it terminated later. The reason I asked and began with this is because in reviewing these conditions that we've challenged, any condition and especially with regard to the place condition and the right to procreate and the right to family, any condition that affects his fundamental liberty interest, and I'll direct the court to the footnote 12 in Blankenship, the court indicated that if there is a fundamental right or a restriction on liberty, the court was reluctant to affirm that condition if it was greater than the mandatory minimum term. So just because a defendant or a probation officer can modify it does not make it any less problematic. As to the risk condition, judgment, I think that your point is well taken. It's not just the vagueness for the probation officer, but there's also the vagueness to the defendant. The defendant has to know what is going to cause that risk notification to kick in. If there is a chilling effect with regard to the risk condition, that's problematic as well. And so we're not just talking about the delegation to the probation officer. We're talking about does the defendant know what the specific risk condition is? And I submit that this risk notification is absolutely one of those types of conditions that if you cannot identify specifically what the risk condition is, this is something that should be promoted for something down the line just as discussed in the case prior to mine, that if something occurs, this should be brought to the court to determine if this is a risk that the defendant should be given notice to other persons and those specific persons should be given notice of. And with that, I ask that Mr. Gibson's lifetime supervision term be remanded for further consideration and that the conditions that we've asked be vacated be vacated. Thank you. All right. Thank you very much to both of you for your arguments today. The matter is submitted.
judges: Clifton, Nguyen, Bennett